UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| PAMELA SUE GIBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 5:15-CV-49-JMH |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | **MEMORANDUM OPINION AND ORDER** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

This matter is before the Court upon Plaintiff's Motion for Judgment on the Pleadings [DE 17] and Defendant's Motion for Summary Judgment [DE 19] on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits (DIB). Plaintiff contends that the administrative law judge ("ALJ") erred in finding that she is not entitled to a period of disability and Disability Insurance Benefits ("DIB") under the Social Security Act. She requests that the Commissioner's decision be vacated, and that this matter be remanded for a de novo hearing or, in the alternative, for a calculation of benefits. The Commissioner asserts that the ALJ's decision was proper and should be affirmed. The Court, having reviewed the record in this case and the motions filed by the parties, will grant the Commissioner's motion for summary judgment and deny the relief sought by Plaintiff.

**I.**

Pamela Sue Gibson ("Plaintiff") filed an application for Title II DIB on July 26, 2011 alleging disability beginning July 15, 2010. [See Administrative Transcript, pp. 27, 70, 157-58, 649-50; hereafter "Tr."].  Plaintiff's Title II application was denied initially and upon reconsideration.[1]  [Tr. 70, 83, 98].  On August 28, 2013, an administrative hearing was held before ALJ Roger L. Reynolds in Lexington, Kentucky.  [Tr. pp. 40-69].  Plaintiff appeared and testified, represented by attorney Kyle Reeder.  *Id*. Vocational Expert ("VE"), Laura Whitten, also testified at the hearing.  *Id*.  In a decision dated September 27, 2013, ALJ Reynolds found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act.  [Tr. 24-35].

Plaintiff was fifty years old at her alleged onset date.  [Tr. 34].  She attended school through seventh grade and for at least a portion of eighth grade.[2]  Plaintiff worked previously as a plant nursery supervisor, certified nurse's aide, and hospital

---

[1] Plaintiff also filed an application for supplemental security income ("SSI") [Tr. 649-50], which application was denied because Plaintiff had resources in excess of the SSI limit. Thus, the subsequent administrative proceedings and this appeal are based solely on Plaintiff's Title II application.  [DE 17 at 1-2].

[2] The Court notes the discrepancy in the record as to whether Plaintiff completed seventh or eighth grade.  Plaintiff reported to Ms. Allen-Genthner that she completed the eighth grade while living in West Virginia [Tr. 393] but testified at the August 28, 2013 hearing that she did not complete eighth grade [Tr. 44].

housekeeper.  [Tr. 33-34].  Plaintiff alleges disability due to lung problems, osteoporosis, and learning disabilities.  [Tr. 200].

After reviewing the record and the testimony presented during the administrative hearing, the ALJ concluded that Plaintiff suffered from the following severe impairments: asthma, chronic obstructive pulmonary disease ("COPD") with continued nicotine abuse; osteoporosis/osteopenia with a history of pathological rib and foot fractures; borderline intellectual functioning; and an anxiety disorder not otherwise specified.  [Tr. 26].  The ALJ found that Plaintiff's history of adrenal carcinoma, chronic kidney disease, and diverticulosis constitute nonsevere impairments.  *Id*. However, ALJ Reynolds concluded that none of these impairments were of listing level severity.  [Tr. 28-30].  Notwithstanding her impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).  The claimant cannot climb ropes, ladders or scaffolds or perform aerobic activities such as running or jumping.  She should have no exposure to concentrated vibration, temperature extremes, concentrated dust, gases, smoke, fumes, excess humidity or industrial hazards.  The claimant requires entry-level work with simple 1-2-3 step procedures, no frequent changes in work routines, no requirement for detailed or complex problem-solving, independent planning or the setting of goals and she should work in an object-oriented environment with only occasional and casual contact with the general public.

3

[Tr. 30].   Based on the testimony of VE Whitten, the ALJ found that Plaintiff could not perform any past relevant work.   [Tr. 33].   But after considering her age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other work in the national economy, such as bench assembly and simple packaging and sorting, and that Plaintiff was not disabled.   [Tr. 34-35]. As a result, Plaintiff was denied a period of disability and DIB. *Id.*

On December 22, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.   [Tr. 1].   Thus, this action followed.

**II.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in substantial gainful activity because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 539 (6th Cir. 2007)(citations omitted). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 642 (6th Cir.2006)(en banc)(quoting 20 C.F.R. § 404.1520(a)(4)).   If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003).

4

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that she suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will determine the claimant's residual functional capacity ("RFC") then review the claimant's RFC and relevant past work to determine whether she can perform her past work. If she can, she is not disabled.  20 C.F.R. § 404.1520(e),(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work.  20 C.F.R. § 404.1520(g).  If she cannot perform other work, the Commissioner will find the claimant disabled.  *Id*.  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is

5

work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Pursuant to 42 U.S.C. § 405(g), judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007))(internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)) (internal quotation marks omitted). In other words, as long as an administrative decision is supported by "substantial evidence," this Court must affirm, regardless of whether there is evidence in the record to "support a different conclusion." *Lindsley*, 560 F.3d at 604-05 (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994))(internal quotation marks omitted). In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)(citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)).

6

### III.

In her motion for summary judgment, Plaintiff argues that the ALJ erred at step three of the sequential evaluation process by failing to find Plaintiff meets Listing 12.05(C), at step four because the RFC determination is not supported by substantial evidence and is the product of legal error and because the ALJ's credibility determination is erroneous, and at step five because the VE's testimony was in response to an incomplete hypothetical. Each of Plaintiff's arguments will be addressed in turn.

### A. Listing 12.05(C)

Plaintiff's first argument is that the ALJ erred by failing to evaluate Listing 12.05(C), the listing for the mental disorder of intellectual disability, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05, and by failing to find that Plaintiff's impairment meets or equals Listing 12.05(C). The Commissioner contends that while the ALJ did not explicitly address listing 12.05(C), the ALJ did explicitly consider listings 12.02 (organic mental disorders) and 12.06 (anxiety disorders) and found that Plaintiff did not meet those listings or any other mental listing. The Commissioner also contends that although the ALJ's analysis does not specifically reference Listing 12.05, the ALJ's analysis of Plaintiff's lack of deficits in adaptive functioning, a requirement of Listing 12.05, indicates that the ALJ considered the requirements of that listing and reasonably found that

7

Plaintiff did not show the requisite adaptive functioning deficits. For the reasons explained below, the Court agrees with the Commissioner and finds that the ALJ's analysis demonstrates that the ALJ did consider Listing 12.05(C), and, even if he had not, it would not have been reversible error.[3]

As noted above, at step three of the sequential evaluation process, a claimant has the burden of demonstrating she has an impairment that meets a medical listing in 20 C.F.R. part 404, subpart P, appendix 1 ("the Listings"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); *Buress v. Sec'y of Health and Human Serv's.,* 835 F.2d 139, 140 (6th Cir. 1987). The claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. *See Sullivan v. Zebley,* 493 U.S. 521, 530–532, (1990). If a claimant's impairments meet or equal a listed condition, the ALJ must find him disabled. *See* 20 C.F.R. § 416.920(a)(4)(iii); *Sullivan,* 493 U.S. at 532; *Buress,* 835 F.2d at 140. On the other hand, an impairment that manifests only some of the criteria in a particular Listing, "no matter how severely, does not qualify." *Sullivan,* at 530.

Listing 12.05(C) provides, in pertinent part, as follows:

---

[3] ALJ Reynolds considered and discussed Listings 12.02 (organic mental disorders) and 12.06 (anxiety disorder), as well as Listing 1.0 for osteoporosis, 3.02 for chronic obstructive pulmonary disease, and 3.03 for asthma. [Tr. 28-29]. Plaintiff, however, only challenges the ALJ's findings concerning 12.05(C), and, therefore, the Court need only address that particular listing here.

> 12.05   Intellectual   impairment:   Intellectual impairment refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning   initially   manifested   during   the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.
>
> ....
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.05(C).  Therefore, in order to prove that the ALJ committed reversible error by failing to address Listing 12.05(C), Plaintiff must point to specific evidence that she reasonably could meet the following three requirements: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning with evidence that the condition began before age twenty-two (i.e. the "diagnostic description"); (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation or function. *Id.; see also Sheeks,* 544 F. App'x at 641.

Plaintiff argues she meets all of the requirements for Listing 12.05(C) and that the ALJ erred by failing to evaluate the listing. To support this claim, Plaintiff states that the record shows that she had difficulties in school before she left eighth grade, has

not obtained a GED, took a test orally to become a certified nurse's aide, reads children's books and four-letter words, often misspells words, and has anxiety which makes it difficult to be around and talk to people. Plaintiff further states that testing by consulting examiner, Ms. Mary Allen-Genthner, upon which the ALJ relies, reveals that Plaintiff's word reading is at a 2.3 grade equivalent, sentence comprehension is at a 2.0 grade equivalent, and spelling indicates a 3.0 grade equivalent. Plaintiff further states that her full scale IQ is 70,[4] which is in the borderline to extremely low range, and that she has other severe physical impairments.

The Commissioner argues that although the ALJ's analysis does not explicitly reference listing 12.05, the ALJ did analyze Plaintiff's lack of deficits in adaptive functioning, which indicates that the ALJ considered the requirements of listing 12.05, and that the ALJ reasonably found that Plaintiff did not meet the requisite deficits of Listing 12.05, specifically with respect to adaptive functioning, despite her low IQ score. [Tr. 32-33]. The Court agrees. The "diagnostic description" or "adaptive skills" prong evaluates a claimant's "effectiveness in

---

[4] The Sixth Circuit has found that the diagnostic definition is not satisfied merely because one IQ score is within the range contemplated by subsection (C) of the severity criteria. *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012) (noting that an IQ score that satisfies the severity criteria alone does not require a finding of intellectual disability).

areas such as social skills, communication, and daily-living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe,* 509 U.S. 312, 329 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 28-29 (3d rev. ed. 1987) ("DSM-III")). Here, ALJ Reynolds found that Plaintiff's "past work history and abilities reflect higher adaptive functioning, as she independently manages her finances, shops, cooks and performs household chores." [Tr. 32]. The ALJ further noted that "the claimant has held two semiskilled positions, one of which required obtaining licensure" although also found that the nursing aide license was obtained orally. *Id.* The ALJ also noted that Plaintiff has a valid driver's license, frequents public forums to shop, drives, watches television, and reads children's books. [Tr. 32-33]. In conclusion, the ALJ found that "[t]he lack of mental health treatment and the claimant's semiskilled work history coupled with the claimant's retained abilities fail to support her allegations of disabling borderline intellectual functioning and anxiety." *Id.*

Furthermore, in the alternative, even if the Court were to find that the ALJ failed to adequately address Listing 12.05 (which it does not as discussed above), the Court finds that it would not have been reversible error. The Listings contain over a hundred

conditions "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a).  While the relevant Social Security regulations require the ALJ to find a claimant disabled if he meets a listing, neither the regulations nor the Sixth Circuit require the ALJ to address or discuss every listing. *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x. 639, 641 (6th Cir. 2013).  "[T]he ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ.  If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* (quoting *Abbott v. Sullivan,* 905 F.2d 918, 925 (6th Cir. 1990)).  Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at step three.  *Id.*

Here, Pl+aintiff has failed to show that the record raises a substantial question as to whether she could qualify as disabled under Listing 12.05.  Specifically, the diagnostic definition of Listing 12.05(C) includes an onset requirement – i.e. the evidence must demonstrate or support onset of the impairment before age twenty-two – and Plaintiff has failed to point to any evidence that her purported subaverage general intellectual functioning with deficits in adaptive functioning manifested prior to age twenty-two.  The only evidence in the record pertaining to this

12

issue is that Plaintiff left school after seventh or eighth grade and does not have a GED, but the record is devoid as to why. Plaintiff states that she does not read or spell well but recalls no special education. Poor academic performance, in and of itself, is not sufficient to warrant a finding of onset of sub-average intellectual functioning before age twenty-two. *Foster v. Halter,* 279 F.3d 348, 355 ("The only evidence in the record pertaining to this issue is that Foster left school after completing ninth grade, but why Foster did not continue her studies is unclear."); *see also Peterson v. Comm'r of Soc. Sec.,* No. 13-5814, 2014 WL 223655, at *7 (6th Cir. Jan. 21, 2014)("neither circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two"); *Eddy v. Comm'r of Soc. Sec.,* 506 F. App'x 508, 510 (6th Cir. 2012)(holding that a claimant's eighth grade education with a history of special education classes did not establish deficits in adaptive functioning prior to age 22).

In summary, having reviewed the record, the Court finds that the ALJ was not required to analyze Listing 12.05 because the record does not raise a substantial question as to whether Plaintiff can meet the diagnostic definition of Listing 12.05,

which includes an onset requirement not supported by the record.[5] Regardless, the Court further finds that, even though not required to do so, by analyzing the requisite adaptive functioning deficit set forth in the diagnostic definition of 12.05, the ALJ implicitly analyzed 12.05 and found that Plaintiff does not meet the listing, which determination the Court finds to be supported by substantial evidence.

## B. RFC and Credibility Determinations

After determining that Plaintiff did not have a listing impairment, the ALJ proceeded to step four, where he compared the claimant's residual functional capacity ("RFC"), which is the most she can still do despite her limitations, to the physical and mental demands of her past relevant work. 20 C.F.R. §§ 416.920(f), 416.945(a)(1). The responsibility for determining a claimant's RFC is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545. An ALJ determines a claimant's RFC considering numerous factors, including "medical evidence, nonmedical evidence, and the claimant's credibility." *Reynolds v. Comm'r of Soc. Sec.,* No. 09-2060, 2011 WL 1228165 (6th Cir. 2011) (citation omitted).

---

[5] Plaintiff having failed to raise a substantial question regarding whether she can meet the diagnostic definition of Listing 12.05, the Court need not address the remaining requirements of Listing 12.05(C). *See Sheeks*, 544 Fed.Appx. at 641.

14

In assessing Plaintiff's RFC by considering the medical evidence, non-medical evidence, and the claimant's credibility, the ALJ found that, despite Plaintiff's impairments, she retained the RFC to perform a range of simple, medium work. [Tr. 30]. In her motion, Plaintiff challenges this finding on two fronts: one, that the ALJ assigned inadequate weight to the medical source statement from treating physician, Hanna Mawad, M.D., and two, that the ALJ erred in determining Plaintiff's credibility.

The Court will first address the weight given to the opinion of Dr. Mawad. Generally, "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'nonexamining source'), and an opinion from a medical source who regularly treats the claimant ('a treating source') is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship ('a nontreating source')." *Gayheart v. Comm'r of Social Sec.,* 710 F.3d 365, 375 (6th Cir. 2013) (citations omitted). Under the treating physician rule, opinions of physicians who have treated the claimant receive controlling weight if two conditions are met: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Id.* at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). If the Commissioner

15

does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. *Id*. "The Commissioner is required to provide 'good reasons' for discounting the weight to a treating-source opinion." *Id*. (citing 20 C.F.R. § 404.1527(c)(2)).

Here, the ALJ gave "little weight" to the statement of Dr. Mawad limiting Plaintiff to lifting no more than ten pounds, and gave the following reasons for doing so:

> The claimant's retained abilities reflect greater exertional capabilities and the objective diagnostic evidence shows improvement in the claimant's osteoporosis. Further, the claimant has experienced no fractures in two years despite performing a wide range of activities of daily living, evidencing a great ability to lift, and Dr. Mawad's treatment notes do not support significant pain or additional complaints justifying such a limitation.

[Tr. 33]. The Court finds that the reasons given by the ALJ for discounting the weight given to the opinion of Dr. Mawad limiting Plaintiff to lifting no more than ten pounds constitute "good reasons" for rejecting the opinion of a treating physician because the reasons explain that Dr. Mawad's opinion is not supported by his treatment notes, which show overall improvement in the osteoporosis and do not show significant pain or additional

16

complaints or fractures, and because the opinion is inconsistent with the other substantial evidence in the record.

Furthermore, the ALJ's reasons are supported by substantial evidence. Dr. Mawad's notes from his August 1, 2013 examination of Plaintiff, approximately one month before his September 5, 2013 assessment was prepared, reflect that Plaintiff's bone mass density was "markedly improved since last year" after beginning Forteo injections. [Tr 622-625]. Plaintiff's own admissions regarding her abilities demonstrate greater exertional capacity than the limitations assessed by Dr. Mawad, which further serves as substantial evidence to discount the weight given to the treating physician's opinion. The record indicates that, despite a history of rib and foot fractures, she had experienced none in the past two years despite routinely completing household chores, laundry, shopping, driving, and cooking. [Ex. 2F, 4F, 8F, 9F, 12F, 13F, 15F, and 16F]. The Court further notes that Dr. Mawad's assessment cites no medical evidence which supports his contention that Plaintiff be limited to lifting no more than ten pounds other than to say that Plaintiff had rib fractures prior to bone therapy, which, according to Dr. Mawad, is proving to be a successful treatment for Plaintiff. For these reasons, the Court concludes that the ALJ's decision to give the opinion of treating physician, Dr. Mawad, little weight was proper under the social security regulations and is supported by substantial evidence.

When weighing the evidence, the ALJ considered the opinion of consulting, examining psychologist, Allen-Genthner, and largely incorporated her opinion in the RFC and gave her opinion "great weight." [Tr. 30; Tr. 396-79].   The ALJ also considered the opinion of State agency doctor, Jack Reed, M.D., who opined that claimant was capable of performing medium work with environmental limitations due to her COPD and osteoporosis [Tr. 92-93], but gave the opinion "moderate weight" because the record supported a finding that Plaintiff had some postural and environmental limitations.   [Tr. 33].   Finally, the ALJ accorded "some weight" to the opinions of the State agency psychologists but found that Ms. Allen-Genthner's opinion was "more consistent with the weight of the record as a whole" and that she had conducted an in-personal examination of Plaintiff.   [Tr. 33].   In sum, the Court finds that the ALJ properly considered and weighed all of the medical evidence, and that the ALJ gave good reasons for discounting the weight given to the portion of Dr. Mawad's opinion limiting Plaintiff's lifting capability to no more than ten pounds.   [Tr. 30-33].   The Court finds that the ALJ's determination in this regard is supported by substantial evidence in the record and not the product of legal error.

The Court will now turn to Plaintiff's contention that the ALJ erred by finding her to be "not entirely credible." [DE 18 at 9, citing Tr. 31].   Although relevant to the RFC assessment, a

18

claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical and/or mental impairments or disability. Social Security Regulation ("SSR") 96-7p, 1996 WL 374186 at *2 (July 2, 1996). When evaluating a claimant's symptoms, the ALJ must follow a two-step process for evaluating symptoms. *Id.* First, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individuals' ability to do basic work activities." *Id.*

When the claimant's description of his or her symptoms is not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's statements based on the entire case record, including medical and laboratory findings, claimant's statements, information provided by treating or examining physicians about how the symptoms affect the claimant, and any other relevant evidence. *Id.* The ALJ may also consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects off any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than

medication, the individual receives for pain relief; any other measures used for pain management; and any other factors concerning the claimant's limitations due to symptoms. *Id.* at *3; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

An ALJ may distrust a claimant's allegations of disabling symptomatology if "the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan,* 923 F.2d 1175, 1183 (6th Cir. 1990). In other words, "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Commissioner,* 127 F.3d 525, 532 (6th Cir. 1997). Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so. *See Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).

The Court finds that although Plaintiff disagrees with the ALJ's stated reasons for rejecting her credibility, it is clear that the ALJ properly engaged in the two-part test for evaluating symptoms. [Tr. 30-33]. First, he found that Plaintiff had medical had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. [Tr. 31]. He then compared Plaintiff's testimony regarding the severity and persistence of her symptoms against the objective medical evidence

20

and ultimately found that the two were inconsistent and that Plaintiff's statements were not entirely credible. *Id*.

The ALJ stated sufficient reasons for his credibility determination when he described in detail the numerous inconsistencies contained in the record. [Tr. 31-32]. The ALJ noted that Plaintiff testified that she was unable to read or write, but then stated that she could read and write simple material when questioned about the fact that she completed her disability forms on her own, and further testified that she enjoyed reading although later clarified she could only read children's books. [Tr. 31, 44-45, 55, 57]. The ALJ noted that Plaintiff had obtained a driver's license and certified nurse's aide license, which evidences greater adaptive functioning than alleged. [Tr. 31, 46]. The ALJ pointed to two previous semi-skilled positions that Plaintiff held in the past. [Tr. 31, 63-64]. The ALJ additionally found inconsistencies in Plaintiff's statements regarding her smoking history, noting that Plaintiff continued to smoke from 2010 through 2013 despite respiratory impairments, osteoporosis, and numerous directives to stop smoking, and furthermore, that while Plaintiff testified that she had stopped smoking one month prior to the hearing (which would have been on or about July 28, 2013), treatment notes from August 1, 2013 describe her as a "current every day smoker." [Tr. 31, 48-49, 623]. The ALJ also found it inconsistent that while Plaintiff

testified that she mostly stayed home, she had reported to Ms. Allen-Genthner that she drove daily. [Tr. 31, 55, 394]. Based on these inconsistencies, the ALJ found that "[a]lthough the inconsistent information the claimant provided may not be the result of a conscious intention to mislead, the inconsistencies nevertheless suggest that the information the claimant provided may not be entirely reliable." [Tr. 31-32].

The ALJ also considered Plaintiff's daily activities in finding Plaintiff to be not disabled. [Tr. 32]. The ALJ noted that Plaintiff performed a wide array of activities including household chores, laundry, shopping, driving, and cooking and had not experienced rib or foot fracture during the past two years despite these activities.[6] *Id*. (citing Exhibits 2F, 4F, 8F, 9F, 12F, 13F, 15F, and 16F). The ALJ found that "[a]s the medical evidence reflects improvements in the claimant's condition with treatment and no recurrent fractures, the claimant's osteoporosis is not disabling." *Id*. The Court also finds that the ALJ did not err by giving "minimal weight" to the opinion of Plaintiff's friend, Michelle Fugate [Exhibit 1E], as the report represents subjective observations of a biased party rather than findings based upon objective diagnostic evidence.

---

[6] The Court notes that Plaintiff told Ms. Allen-Genthner that she exercised daily. [Tr. 394].

The ALJ, not a reviewing court, is to make a credibility finding regarding a claimant's subjective complaints. *Murphy v. Secretary,* 801 F.2d 182, 184 (6th Cir. 1986). Absent a compelling reason, a reviewing court should not disturb an ALJ's credibility finding. *Smith v. Secretary,* 307 F.3d 377, 379 (6th Cir. 2001). Therefore, while Plaintiff disagrees with the ALJ's stated reasons for rejecting her credibility, the Court concludes that Plaintiff has failed to show that the ALJ acted outside his province or abused his discretion in determining that Plaintiff is not entirely credible. Accordingly, the Court finds that the ALJ properly set forth specific reasons for finding Plaintiff's statements concerning her symptoms to be not entirely credible, and declines to disturb the ALJ's findings.

### C. The ALJ's Hypothetical to the VE.

Plaintiff's final argument is that the ALJ erred at step five of the sequential evaluation process. Specifically, Plaintiff alleges that because the ALJ erred at step three by determining an incorrect RFC, the hypothetical question posed by the ALJ to the VE was incomplete at step five, which resulted in VE testimony that could not serve as substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work. To meet his burden at step five, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v.*

23

*Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare,* 587 F.2d 321, 323 (6th Cir. 1978)). This type of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portray's [Plaintiff's] individual physical and mental impairments.'" *Varley,* 820 F.2d at 779 (quoting *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir. 1984)).

As discussed above, the ALJ's decision to give little weight to Dr. Mawad's assessment of Plaintiff's physical limitations is supported by substantial evidence. Therefore, given that there is substantial evidence to uphold the ALJ's rejection of Dr. Mawad's proposed ten-pound lifting limitation as unsupported and inconsistent with the objective medical evidence and record, that limitation need not be included in the hypothetical. *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 548 (6th Cir. 2002)("The hypothetical question need only include the alleged limitations of the claimant that the ALJ accepts a credible and that are supported by the evidence.").

Plaintiff also contends that the ALJ erred by failing to analyze the mental demands of the jobs proposed by the VE, which Plaintiff alleges require her to read at a level higher than she is capable. Plaintiff's argument lacks merit because it presumes that Plaintiff is illiterate, but the ALJ made no such finding.

24

Not only did the ALJ not find Plaintiff to be illiterate, but the evidence of record also does not establish that Plaintiff is illiterate as defined by the regulations.  The regulations define "illiteracy" as "the inability to read or write." 20 C.F.R. § 404.1564(b)(1).  The regulations further provide "[w]e consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." *Id.*

Here, the records shows that Plaintiff attended school through at least seventh grade.[7]  Plaintiff has also not shown that he is unable to read or write.  To the contrary, Plaintiff testified that she could read small, four-letter words so long as they are not long words [Tr. 57] and that she filled out some of the disability application forms [Tr. 44-45].  Plaintiff has also obtained a driver's license, and there is no evidence that the license was obtained by oral examination.  Furthermore, while the assessment notes of consulting examiner, Ms. Allen-Genthner, state that claimant's test scores reflect "functional illiteracy and minimal academic progress" [Tr. 396], the ALJ gave her opinions "great weight" only "insofar as they are consistent with the

---

[7] The Court notes that the regulations explain that a sixth grade education or less constitute a "marginal education", not "illiteracy."  20 C.F.R. § 404.1564(b)(1),(2).

residual functional capacity […]."   [Tr. 33].   Allen-Genthner's assessment also states that the claimant's word reading is on a 2.3 grade level and sentence comprehension is a 2.0 grade level. [Tr. 395].   Thus, she would not be deemed "illiterate" under the regulations but, rather, someone with "marginal education." 20 C.F.R. § 416.964(b)(2).

Based on the foregoing, Plaintiff has not shown that she is illiterate.  For this reason, the Court finds that the hypothetical question posed to the VE, which described an individual who could perform entry-level work with simple, one/two/three-step procedure with no frequent changes in work routines and no requirement for detailed or complex problem-solving [Tr. 65] accurately portrayed the claimant's abilities and limitations.   As stated above, the ALJ is only required to incorporate those limitations which he or she finds to be credible. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993).   Having reviewed the record, the Court finds that the ALJ's implied conclusion that Plaintiff is not illiterate to be supported by substantial evidence.   The Court also finds that the hypothetical posed to the VE to be proper.

## IV.

In conclusion, after reviewing the record and motions of both parties, the Court finds that the ALJ's decision that Plaintiff is

not disabled is supported by substantial evidence and is not the product of legal error.

Accordingly, it is hereby **ORDERED** as follows:

(1)  Plaintiff's Motion for Judgment on the Pleadings [DE 17] is **DENIED;**

(2)  Defendant's Motion for Summary Judgment [DE 19] is **GRANTED;**

(3)  Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 22nd day of February, 2016.

Signed By:

_Joseph M. Hood_

Senior U.S. District Judge